Please make your appearance and proceed. I understand two of you will be trying to argue today. You're going to have to manage your own time, but we'll work with you. Okay. So, I think it's Mr. Litchfield who's going to begin. Yes, your honor. Please support.  Mr. Litchfield, I represent the appellant, the Cincinnati Insurance Company. The key to this case has always been and remains the absolute pollution exclusion that's in our policies. There's certainly an effort to avoid discussion of an analysis of that exclusion through this concept of legal ambiguity and potential for coverage. But the bottom line is that we're being asked to accept an outlier series of cases from one state, Indiana, that fly in the face of 79 decisions from 47 states that apply this exclusion or exclusions that are substantially similar to this exclusion to facts that are like the facts here or substantially similar to the facts here. Among those cases is the Headwaters case from this court. Now, to be sure, Headwaters applies Utah law, but we've established that the basic principles of insurance coverage, interpretation, and construction in Utah are just like those in New Mexico. Thus, there's no reason not to treat Headwaters as essentially binding because there'd be no difference in the analysis. There'd be no difference in the outcome applying those same basic principles to similar facts and a substantially the same pollution exclusion. Mr. Litchfield, let me ask you a question. Assuming we agree with you that we should not accept the Indiana per se ambiguity rule, do we have to determine whether the literal interpretation or the situational approach apply? If they both do not provide coverage, do we have to predict which one would be accepted here? And that would probably be the situation here since under either one of those lines of cases, the facts here would clearly supply a situation where there would be no coverage under the exclusion. Now, Chisholm's uses this approach to the Indiana cases to buttress something that it calls legal ambiguity. And in that context, it says that the New Mexico Supreme Court would follow the Indiana cases, but the New Mexico Supreme Court has never followed Indiana coverage decisions that we could find. It's never followed an outlier coverage decision to this extent of an outlier that we could find. And nobody is pushing back on that from the Chisholm side. Another indication of what the New Mexico Supreme Court would and would not do is the Flores decision, which is discussed extensively in the briefing. And Flores reflects that this idea that the failure to specifically list PCE as a pollutant, that that somehow creates an ambiguity. The exact same argument was made in a slightly different circumstance in Flores, and it didn't fly. Flores did involve a business services exclusion, but the argument was in effect, you didn't list it specifically, and as a consequence, there's an ambiguity. Same thing we're hearing here. The fact of the matter is that the jurisprudence from the New Mexico Supreme Court shows that it takes a more balanced approach to analyzing the authority from other states. We can see this in the Desert States decision, which analyzes national authority and then chooses to follow the majority rule nationally. We can see it in the GNG decision, which is a case that Chisholm is a proponent of on this duty to investigate point, which it doesn't support anyway. But the point is GNG in the Supreme Court in that case didn't take this same approach that is predicted here either. Why wouldn't this why wouldn't this enumeration approach be workable? In other words, why couldn't you just say incorporate the definition of hazardous substances that the EPA has and have that be consistent with the Indiana approach and list? And that would, of course, presumably include PCE. Why couldn't that be a system that would work? And therefore, why couldn't that be construed to be what a reasonable insured would expect? Judge Holmes, I think that the operative word in your question is the word workable. I think to take that approach would be utterly unworkable. The record here reflects, first of all, that the US EPA has its own list of hazardous substances, which PCE, by the way, is one. Now, that list itself is thousands upon thousands of substances. The idea is that even though that list exists, the argument here is, well, that's not even good enough. You have to specifically put the words PCE or or a perk or some derivation of that into the exclusion for it to apply where PCE is the contaminant. Is that is that what you're maybe that's what your opponent has said. I don't recall that being what their argument was. I mean, and you can correct me if I'm wrong. But it would seem to me that if you there are situations in contracts where you just incorporate by reference some standard or some principle. In other words, you wouldn't have to list the thousands and thousands of hazardous substances. You would just and PCE is one of them. You would just by definition and do it by cross reference. Why? What am I missing? I don't think you're missing anything, Your Honor. As a matter of fact, there is such an incorporation by reference in exclusion here, which is a reference to any substance that's been determined by the government to be a hazardous substance. Words to that effect. But even that doesn't seem to be enough for our opponent. The argument over and over again is harkens back to the Indiana cases and the Indiana cases very clearly say you have to specifically use the actual word, period. And, you know, I'm not one to overdo parade of horribles arguments, but I think that's just the fact of what the argument is here and what is what is asserted. And thus, it's not a good way to to work through what the New Mexico Supreme Court would be predicted to do. I think also one should look to the United Nuclear case where the New Mexico Supreme Court had no problem treating regular radioactive waste as a pollutant. And one should look to the Mesa oil case where this court had no problem treating oil as a pollutant. So let me let me let me ask you, if I may, a question about United Nuclear. United Nuclear seemed to lay out a methodology to go about determining whether there was ambiguity. And what by what I mean by that is it enumerated like four things that it was going to look to. Maybe I think it was four or four, maybe five that it was going to look to. It would look to dictionaries. It would look to the language itself. It would look to ultimately if it ever got to it, industry documents, drafting history, that kind of thing. Is that in light of the fact that we're talking about the New Mexico Supreme Court walking through a process of determining whether the term I believe was sudden in that case was ambiguous? Is that an approach that would make sense for us to apply here? And if the answer is yes, then what would be the outcome of doing that? Judge, let me give you a quick answer and then turn this over to Mr. McAllister. But I think the answer is yes, United Nuclear does those things, but nobody here, neither Chisholm's nor the underlying court is in any way hearkening to those modes of analysis, which are the more traditional ways of analyzing an insurance policy in New Mexico. Oh, let me be clear on that answer. You're saying that nobody here is saying that we should do that. Apply that methodology. Not that I've seen your honor. All right. Your honor, may it please the court. Steve McAllister, I'd like to pick up with the chief's question there about United Nuclear. And in essence, to a great extent, we are suggesting an analysis consistent with United Nuclear, certainly on Fidelity's side. It's the plaintiff that is suggesting something different. If you look closely at United Nuclear, which I'm sure you have, you have a word there, sudden, that was the issue. There was no definition in the policy here. The word is pollutant. There is a precise definition in the policy there. They looked at different dictionary definitions of the word. We've not really pushed that. But there is a lot of argument in the briefs about the significance of a split of authority. And I would point out in United Nuclear what you have. If you look at the footnotes, you had seven courts finding the term unambiguous and seven courts finding it ambiguous. You had an even split with a significant number of decisions. Here, you have one decision opposite a huge majority going the other direction. So if you did apply United Nuclear, it would lead to the correct outcome here, certainly. And if I may just interrupt one second, yes. And I wasn't suggesting that it entirely maps onto this case. I was trying to understand whether to the extent that it is applicable and whether its methodology would be one that would make sense to apply here. And I believe it would, Chief Judge. I believe it would. And I'd also like to emphasize the point you started with. This case really boils down to just the question, would the New Mexico Supreme Court adopt the Indiana approach or not? That is all the court has to decide. It does not have to choose between the literal or situational approaches. That is why there's no reason to certify the question here to the New Mexico Supreme Court. It's not a hard question. The answer is clear. And because the answer is clear that there is no coverage here, there's also no duty to defend. So plaintiffs argued somehow if it can come up with any kind of argument, there ought to be a duty to defend. But that's not New Mexico law. New Mexico law says look at the eight corners, the complaint and the policy. Is there any plausible basis for coverage? Here there is not unless one adopts the Indiana approach. So there's no duty to defend. Mr. McAllister? Go ahead, Judge Matheson. Thank you. Could I just jump in and ask you about one part of the district court's opinion where it talks about the fact that the circular complaint alleged unnamed hazardous substances and then said that the insurance company should have investigated to identify what those substances are. And it seems as if the district court was stating that as an alternative ground. You may want to speak to that. But was the general reference to hazardous substances, does it trigger any kind of duty to investigate? Judge Matheson, not in this context, because given the plaintiff here, the underlying facts were that there had been dry cleaning operation on this site. PCE is the common solvent used in dry cleaning operations. It was evident from the complaints and its numerous references to PCEs that at this site, that was the contaminant or irritant, the pollutant that had been released. And that excluded coverage under the policy. And therefore, there was no duty to defend or to investigate further in this situation. Fidelity fulfilled its obligations in terms of a duty to investigate. And I'd also like to just address briefly Chief Judge Holmes' question about incorporating by reference. I mean, certainly that's possible. But it seems rather strange in this context. If you can put in a link to an EPA website that shows you over 80,000 hazardous substances. I mean, realistically, what insured is going to read all of that? And so you're still going to end up with litigation saying, I had no idea that was on the list. It was unreasonable for the insurance company to expect me to review 80,000 substances on a list. I just don't think that's workable. As well as I agree with my colleague, Mr. Litchfield, about that's not really what Indiana is seeking to require here. So with the court's permission, I'd like to reserve the remaining time for rebuttal. That's fine. We'll hear now from Apo Lee, please. May it please the court. Good morning, Your Honors. My name is Tom Nasko. I represent the Apo Lee, Chisholm's Village Plaza in this case. Your Honors, this case on appeal bears little to no resemblance to the case that was actually tried before Judge Browning and submitted to oral argument to him. The issues have morphed substantially because we had different out-of-state counsel in the trial court than we have today. There is no suggestion, there was no suggestion to the district court that the court should adopt one interpretation of the pollution exclusion over the other. It was not a coverage case. Coverage and indemnity benefits were never at issue. The argument presented to the district court was that there was sufficient uncertainty on a couple of levels. One of which was which version of the interpretation of the pollution exclusion would the New Mexico Supreme Court adopt? Would it be the literal, the situational, or the ambiguous per se approach? We did not know. We knew that there was indications, A, that they would never adopt the literal approach and likely not adopt the situational approach because of the Montano case where the court doesn't tolerate case-by-case analysis of ambiguity. And there is support in the United Nuclear and other cases for adopting the ambiguous per se approach. But we did not suggest to the court, we did not presume to know, that the New Mexico Supreme Court would adopt one over the other. Additionally, my primary arguments to Judge Browning were that under the three prongs of the pollution exclusion, it wouldn't matter what approach the New Mexico Supreme Court adopted because there was sufficient uncertainty as to the application of each of those three prongs. And I'm going to discuss that further in my presentation, Your Honors. In New Mexico, however, the duty to defend law is very well developed, extremely well developed, and the court has to make no eerie prediction. Under the Knowles case, the Supreme Court has announced it's much broader than the duty to indemnify. It's distinct from it. It's a separate agreement contained within the insurance policy. It's triggered if there is the potential for coverage. The State Farm versus Price case is also instructive. The Supreme Court said, look, we don't look at whether there is actual coverage, which is what these insurers want this court to do. We look as if to determine whether there is a potential for coverage. And if there is, if there is a potential, the proper recourse under New Mexico law, and this is uncontroverted, is you defend the case. And if you think your interpretation is right, Mr. McAllister, Mr. Litchfield, think that their interpretations of the pollution exclusion is right, they defend and they file the declaratory judgment action to find out. Well, what I what I heard what I heard them saying, however, was that ultimately we don't need to decide whether they're right. We just need to decide whether under any viable scenario there is coverage. And if the answer to that is definitively no, then then then your position is undercut. I mean, in other words, as I understand, that's why I asked the question. Ultimately, this does not become a debate over the literal or the situational approach. The question is whether what the what the district court did as it related to the Indiana approach applies. And if the answer is no, then then the question is, is there any basis for coverage under the literal or situational approach? Either one. Right. Your Honor, I respectfully would push back on that a bit because there is no definitively no answer to that question. There are indications for the New Mexico Supreme Court. Well, let's start at the beginning. I think it's fairly obvious the New Mexico Supreme Court would never adopt the literal interpretation because of one spilled hot sauce on the ground, which has components of hazardous substances. Any personal injury from a slip and fall would be excluded. There is an indication from the New Mexico Supreme Court in the Montano decision, which Judge Browning cites at length. That's that's a car insurance case, right? Absolutely. Your Honor. That's an entirely different context, is it not? I mean, with different policy objectives. Your Honor, it is a different it is it is an anti-stat is a stacking provision and uninsured motorist case. That is true, but it's still an indication from the Supreme Court that the court does not like case by case analysis of ambiguities, particularly in exclusions. When one superimposes upon the Montano case, the United Nuclear case where the court indicated that that exclusions are narrowly construed, narrowly construed and any ambiguities are resolved in the insurance favor. So, yes, there are certain there are indications that the Supreme Court could adopt. The ambiguous per se approach because of the United Nuclear case, the court does not like ambiguities and exclusions, and Judge Browning went through that, I think, in excruciating detail now. Well, counsel, could I just ask you? The district court did make an eerie guess. It discussed eerie at some length, and then the guess was that the Indiana approach would apply. And I don't hear you defending that decision. Is your argument at this point one for an alternative ground to affirm? Your Honor, thank you, Judge Mathison. No, I fully defend Judge Brown's determination that the ambiguous per se approach would have likely supported New Mexico, but there are alternative grounds in the decision. Now, it's a very erudite decision of Judge Browning. However, because of Judge Bursiaga's decision in Pericles, showing that when there is a legal ambiguity, it's treated just the same as a factual ambiguity. I believe that the entire case could have been resolved based on the last five pages of Judge Browning's decision, pages 105 to 110, where the court determined that, well, even if the court would adopt a different approach, there's sufficient legal ambiguity to invoke the absolute duty to defend, which is very well developed in New Mexico. But under any approach, the absence of investigation here, Your Honors, to determine whether these pollutants were even subject to the clause would invoke the duty to defend. We don't know, because Mr. McElster said, yes, there were allegations of PCE releases. There were, but there were also allegations of other unknown hazardous substances. And we know from the jurisprudence that unknown hazardous substances often don't qualify as pollutants under the absolute pollution exclusion. For instance, carbon monoxide, things of that nature, we don't know. There was no investigation to find out. So that, in and of itself, created a sufficient ambiguity to invoke the duty to defend. Counsel, you picked up on a question that I asked Mr. McElster, and I'm interested in your response to it as well. You mentioned investigation. What does the case law tell us, the New Mexico case law, the Penn Circuit case law, tell us about any kind of duty to investigate? And who has that duty in the first instance, if there is one? There is a duty to investigate, Your Honor. There's a duty to investigate under New Mexico law when the determination of coverage is unknown. And the way that occurs under New Mexico law, under the Price case and others, is you defend the complaint. Then you conduct your investigation. And that is why insurers often issue reservation of rights letters. So they will defend, then investigate. If facts arise indicating through the investigation that certain releases did not qualify as pollutants under the absolute pollution exclusion, they continue with the defense. Or they bring a declaratory judgment action to get that determination. And this, Your Honor, falls into another section of the argument, which I think is extremely important, that I argued primarily to Judge Browning that under any interpretation of the absolute pollution exclusion, there was sufficient uncertainty to invoke the duty to defend. The first clause precluded coverage for any pollutants that were released from property owned and occupied by the insured. Well, the complaint alleged that the insured was liable for releases from properties it didn't own or occupy. So Judge Browning dismissed that. Fidelity made that argument in the district court. They abandoned it on appeal. That was the first leg of the pollution exclusion. The second, which is actually the third that Judge Browning discussed, excluded losses, costs, or expenses arising out of any claim by a government agency. Well, there were many, many losses, costs, and expenses arising out of claims by the EPA. We acknowledge that. But there was also a claim by the city and county for costs, quote, apart from, end quote, those types of costs. Judge Browning, at the record of 1021, determined that those costs had to arise from something else. Again, no investigation, so there was a duty to defend. Interestingly, Your Honor, this segues nicely into Judge Matheson's question of supporting the Indiana approach to this. The second clause was costs incurred as a result of an order or demand from a government agency, and certainly there were those costs. However, in our summary judgment filings, we made a prima facie showing that the first demand from the US EPA occurred in 2009 through an administrative order. Yet there was an RIFS, a remedial investigation and feasibility study, performed seven years earlier, in 2002, with no indication that there had been a demand to do so by anyone. Judge Browning acknowledged that in 1024 of the record and said, well, if an investigation by Cincinnati and Fidelity had revealed that those costs were incurred prior to the demand, then Fidelity would have a duty to defend. But he said, I'm not going to decide that because I think New Mexico would likely adopt the Indiana per se rule. And, Your Honors, before I get into the support for that, I'd like to point out that I'm not entirely sure why Cincinnati is here on this appeal. I have no idea why, because they have an alternative liability provision in their policy, which makes the second and third legs of the pollution exclusion clause inapplicable if the insured would be subjected to liability under any other laws that were not alleged in the complaint. Judge Brown determined that they would have been. Now, Cincinnati never responded to that argument in the district court. They never made the argument in the briefs in response to our papers. They never made the argument at the oral presentation before Judge Browning. They waived that right. It's completely gone. So we have the first clause of the pollution exclusion, the owned and occupied, out. Fidelity agrees with that. The second and third clauses are out with respect to Cincinnati because they waived the right to even contest them. We don't hear about it in the docketing statements. We don't hear about it in the primary briefs. We don't hear about the legal ambiguity arguments in the primary briefs. What all this case is about is about the duty to defend. So then in the district court address the alternative liability provision. In other words, whether Cincinnati argued it or not, district court passed upon the issue. And under those circumstances, why shouldn't Cincinnati be able to address it on appeal? Well, Your Honor, under those circumstances, Cincinnati should have put the issue in its docketing statement and alerted this court that it was going to address it. And it should have put the issue in its principal brief, which it did not. The issue only appears in its reply brief because they have never, Judge Browning ruled on two alternative basis. One, they didn't respond to the issue and they waived it. And two, he went to the merits of it, looked at the clause and determined, yes, indeed, it did apply. I guess that's my point. I guess that's my point. The court nonetheless addressed it and addressed it in a way that Cincinnati now wants to challenge. But you're saying even under those circumstances, they can't challenge that ruling? That's correct, Your Honor, because they didn't do so in their primary briefs. How do we not raise the issue in our answer briefs? The court would never have been apprised of that issue at all. But Judge Browning, as is his practice, and I'm sure this court is well aware of his practice, is to analyze everything every which way he can. And so he did analyze that. You're correct, Your Honor, Judge Matheson, that he did, in fact, analyze the merits of the clause. And let me address that, if I may, for a moment, because the merits of the clause, Cincinnati replies and says, well, no one made a claim against him for trespass or nuisance or anything else like that. And so, therefore, it doesn't apply. Well, this is a restorative clause. It's not an exclusionary clause. It's a restorative clause. So it actually restores the original grant of coverage. And New Mexico law is also well developed on that in United Nuclear, that exclusionary clauses are very narrowly construed. But when you restore the coverage, it's broadly construed. So Judge Brown is absolutely correct that under that broad construction that the mere likelihood that there was an additional claim out there would remove those two clauses from the pollution exclusion. So, Your Honors, no matter how we analyze the case, you can analyze it. Is there sufficient uncertainty as to which interpretation of the pollution exclusion the New Mexico Supreme Court would apply? That's all the court has to determine. Is there uncertainty? I think the answer is undeniably yes. Or secondly, is there sufficient uncertainty under the application of the three clauses without any investigation should there have been a defense obligation? And under the Horton case, the New Mexico Court of Appeals has cautioned that you do so at your peril if you don't defend. As a matter of fact, it's a very severe consequence. You lose the right to challenge coverage in a later action. So we know there's also sufficient support for the ambiguous per se. We know that from United Nuclear. Judge Browning was correct. And is your first ground of uncertainty, legal uncertainty, related to whether the ambiguous per se or the literal or situational applies? Is that what you deem to be the uncertainty? Your Honor, there are two uncertainties. One, with that, you've hit one issue. That is absolutely correct. The second issue, I see my time is up. May I briefly answer the question? Please finish. And, Your Honor, the second one is the application of the three clauses, which no one talks about, under any interpretation of the pollution exclusion, showed sufficient uncertainty to invoke the duty to defend, which is well-developed in New Mexico law. We don't have to determine actual coverage. I urge this court not to go down that route. The court only needs to determine whether there was sufficient uncertainty to invoke the duty to defend, either A, under the choice of the interpretation of the exclusion, New Mexico might or might not adopt, and two, under any approach, did the three prongs arguably not apply because there was no investigation to determine if they did or did not. And with that, Your Honor, I urge the court to affirm Judge Browning's multitude of reasons that he gives the court. The last place the court needs to venture is into making an eerie guess as to how New Mexico would make this determination. It's only necessary for the court to say, yes, there was sufficient uncertainty to invoke the duty to defend.  Counsel for appellant. Thank you, Your Honor. May it please the court. I'd just like to make a couple of quick points in rebuttal. One, it's clear from this court's cases, construing New Mexico law and New Mexico cases, the eight corners rule is the way to determine both the duty to defend and the duty to indemnify. I urge the court to look at the New Mexico Physicians versus Lemur case, New Mexico, 1993, where the court clearly said no coverage means no indemnity and no duty to defend. And the general principle there the court applied said interpret unambiguous language in the, quote, usual and ordinary sense. And in that case, the court found no duty to defend because there was no coverage under the policy. And that's all I have, Your Honors. Thank you. Anything else? Yes, Your Honor, if I may very quickly. With regard to investigation, I would urge the court to take a good look, as I know it has, at the G&G case, which is all about whether there are extra facts not alleged in the underlying complaint that put something into coverage. That was the basis of the ruling there. Nobody is asserting such extra facts here. With regard to the allegation of hazardous substances in the underlying complaint here, that was in the context of CERCLA, which defines hazardous substances in a fairly particular manner. And we went through that in some detail in the briefing. With regard to the abandonment of arguments about the various clauses, I think both appellants here had extensive discussion of each of the subparts of the exclusion and how those subparts apply to the underlying complaints. There's no abandonment in that behavior. Okay. All right. You're going to have to wrap it up, Mr. Litchfield. The only thing I was going to say at the end, Judge, is as to things morphing, the record is here. We've relied on the record. The briefs are before the court. We've relied on the briefing, including what our opponents have said. It's not a morphing situation at all. It's a normal appeal from that perspective. All right. Very good arguments, counsel, on both sides. We appreciate it. Case is submitted. Thank you.